# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE<br>    FREY MECHANICAL GROUP, INC., | : CHAPTER 7<br>:<br>: |
|           DEBTOR. | : BANKRUPTCY NO. 10-10349-MDC<br>: |
| CHRISTINE C. SHUBERT, CHAPTER 7 TRUSTEE<br>FOR THE ESTATE OF FREY MECHANICAL GROUP, INC., | :<br>:<br>: |
|           PLAINTIFF, | : ADVERSARY NO. 10-00159-MDC |
| V. | : |
| STANLEY MULL AND JOAN W. MULL, | : |
|           DEFENDANTS. | : |

# MEMORANDUM OPINION

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

## INTRODUCTION

Before the Court for consideration is the Motion for Partial Summary Judgment (the "Motion") of Chapter 7 Trustee, Christine C. Shubert (the "Trustee") for the Estate of Frey Mechanical Group, Inc. (the "Debtor") requesting judgment against Stanley Mull ("Mr. Mull") and Joan W. Mull ("Mrs. Mull") (collectively, the "Defendants") pursuant to 11 U.S.C. §§ 547(b) and 550 in the amount of $740,000 (the "Transfers"). The Trustee asserts that she is entitled to judgment in her favor because the Defendants, the father and mother of the Debtor's secretary and the parents-in-law of the Debtor's president, are "insiders" as defined by 11 U.S.C. § 101(31) who received the Transfers as repayment of loans made by the Defendants to the Debtor.

The Defendants admit the Transfers, but oppose recovery of the payments by the Trustee on the grounds that they served as a lender to the Debtor and as such the Transfers are exempt from recovery as ordinary course transfers pursuant to 11 U.S.C. § 547(c)(1). In addition, the Defendants assert that they

provided new value to the Debtor after receipt of the Transfers as provided for by 11 U.S.C. § 547(c)(4).

For the reasons discussed below, this Court will grant the Trustee's Motion, but only in the amount of $400,000.

**PROCEDURAL HISTORY**

On January 18, 2010 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition. Thereafter, the Debtor's case was converted to Chapter 7 on February 9, 2010. Upon conversion, the Trustee was appointed. On April 10, 2010, the Trustee filed a Complaint against Mr. Mull initiating this adversary proceeding (the "Complaint").

In the Complaint, the Trustee sought the recovery of payments totaling $759,549.54 (the "Payments") made by the Debtor to Mr. Mull for amounts advanced under three unsecured loans. The Trustee alleged four counts that serve as the basis for recovery of the Payments. Count I sought relief on the basis that the Payments were preferential transfers pursuant to 11 U.S.C. § 547(b). Count II sought recovery of the Payments as fraudulent transfers under 11 U.S.C. § 548. In Count III, the Trustee relied on the rights provided by 11 U.S.C. § 544(b), the rights of actual unsecured creditors under applicable law to void transfers, and the Pennsylvania Uniform Transfers Act, 12 Pa. C.S.A. §§ 5101-5110. Count IV requested recovery of the Payments from Mr. Mull as the initial transferee pursuant to 11 U.S.C. § 550.

In response to the Complaint, Mr. Mull filed an Answer and Affirmative Defense to the Complaint (the "Answer") denying, among other things, that he was an insider of the Debtor and asserting that he acted as the Debtor's lender. He also asserted as affirmative defenses that (1) the Payments were made by the Debtor in the ordinary course of business and contemporaneous exchanges of value, and (2) the Debtor was not insolvent or rendered insolvent as a result of the Payments and received consideration in exchange for same.

Thereafter, the Trustee amended the Complaint (the "Amended Complaint") to add Mrs. Mull as a defendant. The Defendants filed an Answer and Affirmative Defense to the Amended Complaint (the "Answer to the Amended Complaint") asserting the same answer and defenses as those in the Answer.

On November 1, 2010, the Trustee filed the Motion requesting judgment against the Defendants

under Counts I (preferential transfer) and IV (recovery against initial transferee) for the amount of the Transfers. The Trustee contends that Mr. Mull's answers to the First Request for Admissions (the "Answers to Admissions"), wherein he admitted all of the elements of 11 U.S.C. §§ 547(b) and 550; and the deposition testimony of Jerald Frey ("Mr. Frey"), the Debtor's President, wherein he admitted that the Debtor was insolvent for the last ten (10) years and that the Defendants received more than they would have under a Chapter 7 liquidation, establish that all of the elements of a preferential transfer required under 11 U.S.C. § 547(b) have been satisfied. The Trustee also asserts that notwithstanding the Defendants' argument to the contrary, it is undisputed that the Defendants admit that they are the parents of Jennifer J. Frey ("Mrs. Frey"), the spouse of the Debtor's President, and are therefore "insiders" of the Debtor.

In her Memorandum, the Trustee also argues that she is entitled to judgment for the Transfers because the Defendants' defenses to the action are without merit. The Trustee contends that the Transfers were not made in the ordinary course of business dealings between the parties nor were they made according to ordinary business terms because (1) the Defendants were not in the business of making loans to companies and had not done so in the past; (2) the loans at issue were not made according to ordinary business terms because no lender would have made an unsecured loan to a company in the Debtor's financial condition and there were no terms for at least one of the notes; and (3) the timing and the amount of the payments during January 18, 2009 through January 18, 2010 (the "Insider Preference Period") differed significantly from those in the pre-preference period.

In response to the Motion, the Defendants filed a memorandum of law dated November 18, 2010 (the "Response"). In the Response, the Defendants conceded that the Transfers constitute preferences as defined by 11 U.S.C. § 547(b) and that they are "insiders" as defined by 11 U.S.C. § 101(31). However, the Defendants opposed the Motion on the grounds that there are material issues of fact in dispute. First, the Defendants allege that a genuine issue of material fact exists with regard to whether the Defendants are entitled to invoke the ordinary course business exemption provided pursuant to 11 U.S.C. § 547(c)(2). Second, the Defendants allege that a genuine issue of material fact exists with regard to whether the

3

Defendants are entitled to invoke the new value exemption provided pursuant to 11 U.S.C. § 547(c)(4).

On December 1, 2010, the Court held a hearing on the Motion. At the hearing, the Defendants initially argued that summary judgment was not warranted because there were material issues of facts regarding their ordinary course and new value defenses. Defendants later conceded that there are no material facts in dispute and as stated in their Response "it is the interpretation of the facts and the application of the law to those facts that is at issue." Response, p.5.

**FACTUAL BACKGROUND**

    A.    **The Loans**

The Debtor originally had a secured line of credit with Susquehanna Bank. In 2003, due to the Debtor's financial condition, Susquehanna Bank refused to extend the line of credit. As a result, the Defendants decided to provide an unsecured line of credit in the amount of $400,000 (the "Line of Credit") directly to the Debtor.[1] In exchange, the Debtor issued a promissory note to the Defendants in the principal amount of $400,000 with a maturity date of March 30, 2005 (the "Line Note"). The Line Note did not include any provisions on how draws would be repaid. However, there was an agreement between the Debtor and the Defendants that the Debtor would draw on the line as needed, and repay the draws when the Debtor had excess funds. Although the Line Note matured on March 30, 2005, the Debtor continued to take advances and did not pay the Line Note in full until 2009.

On April 1, 2006, Mr. Mull loaned the Debtor an additional sum of $300,000 pursuant to a Balloon Payment Promissory Note (the "Mr. Mull Balloon Note"). On that same date, Mrs. Mull made an additional loan to the Debtor in the amount of $200,000 as evidenced by a Balloon Payment Promissory Note (the "Mrs. Mull Balloon Note," collectively with the Mr. Mull Balloon Note, the "Balloon Notes"). The Balloon Notes provided that the Debtor would make interest-only payments with the principal to be paid in full on or before April 1, 2011. The Defendants were not paid the principal

---

[1] In order to provide the Line of Credit to the Debtor, the Defendants opened a secured line of credit in their own name with Susquehanna Bank. The Defendants authorized their daughter, Mrs. Frey, to make draws on this account directly on behalf of the Debtor.

4

under the Balloon Notes and filed proofs of claim in the aggregate amount of $500,000.[2]

**B.    The Transfers and Advances**

During the Insider Preference Period, the Debtor repaid to the Defendants the following amounts on the Line of Credit totaling $740,000:

1. Check Number 24722 dated January 20, 2009 in the amount of $150,000.
2. Check Number 24729 dated January 20, 2009 in the amount of $50,000.
3. Check Number 24825 dated February 9, 2009 in the amount of $40,000.
4. Check Number 25085 dated March 30, 2009 in the amount of $80,000.
5. Check Number 25142 dated April 15, 2009 in the amount of $20,000.
6. Check Number 25190 dated April 28, 2009 in the amount of $50,000.
7. Check Number 25202 dated May 1, 2009 in the amount of $50,000.
8. Check Number 25307 dated May 28, 2009 in the amount of $300,000.

During the Insider Preference Period, the Defendants advanced a total amount of $340,000 (the "Advances") to the Debtor under the Line of Credit. Those Advances are identified as follows:

1. An advance in the amount of $75,000 dated January 30, 2009.
2. An advance in the amount of $25,000 dated February 4, 2009.
3. An advance in the amount of $20,000 dated February 6, 2009.
4. An advance in the amount of $20,000 dated March 25, 2009.
5. An advance in the amount of $100,000 dated April 7, 2009.
6. An advance in the amount of $60,000 dated April 23, 2009.
7. An advance in the amount of $20,000 dated April 27, 2009.
8. An advance in the amount of $20,000 dated May 18, 2009.

---

[2] The Debtor paid the Defendants the sum of $19,429.54 in interest payments on account of the Balloon Notes during the Insider Preference Period. The Trustee has waived her right to avoid and recover these payments.

5

## STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. C. P. 56(c).[3] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994); *Data Int'l. of N.C., L.L.C. v. STV, Inc.*, 159 F.Supp.2d 844 (E.D. Pa. 2001). The moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the Court in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no genuine issue of fact for trial and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587; *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

Here, neither party disputes the underlying facts. The parties agree that the factual predicate exists to establish that the Transfers constitute preferences pursuant to 11 U.S.C. § 547(b) and that the Defendants are insiders as defined by 11 U.S.C. § 101(31)(B). As a result, the only remaining issue is whether the Trustee is entitled to judgment "as a matter of law." *See, e.g., Waters v. NMC-Wollard, Inc.*, Civ. No. 06-0032, 2008 WL 90241, at *3 (E.D. Pa. Jan. 9, 2008) ("if no factual issues exist and the only issues before the court are legal, then summary judgment is appropriate"); *In re Spring Ford Indus., Inc.*, Bky. No. 02-15015, 2005 WL 984180 (Bankr. E.D. Pa. Apr. 19, 2005) ("Here, the parties agree that there

---

[3] Federal Rule Civil Procedure 56 is made applicable to these proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056.

are no disputed facts and that resolution of this adversary proceeding turns upon issues of law.").

The Trustee contends that she is entitled to judgment because the undisputed facts preclude this Court from finding that the Defendants can establish that they are entitled to invoke either the ordinary course exemption provided pursuant to 11 U.S.C. § 547(c)(2) or the new value exemption provided pursuant to 11 U.S.C. § 547(c)(4). In response to the Trustee's allegations, the Defendants have the burden of establishing that, drawing all inferences in their favor, they would be entitled to each affirmative defense. *See Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (holding that the mere pleading of affirmative defenses "are insufficient to repel summary judgment."); *Johnson & Johnson v. American Home Products Corp.*, Civ. No. 94-1388, 1996 WL 39445, at *2 (E.D. Pa. Feb. 1, 1996) ("Where, as here, the party opposing a motion for summary judgment has the burden of proof, it is incumbent upon that party to put forward evidence creating a genuine issue of fact, thereby entitling it to get to the jury."); *Lichtenstein v. Aspect Computer (In re Computer Personalities Systems, Inc.)*, Adv. No. 02-0684, 2004 WL 1607005, at *5 (Bankr E.D. Pa. Jul. 2, 2004) (citing 11 U.S.C. § 547(g)).

As a result, a ruling on the Motion requires the Court to consider: (i) whether, as a matter of law, the record permits the inference that underlying debt was incurred in the ordinary course of the Defendants' business; and (ii) whether, as a matter of law, the record permits the inference that the Transfers were offset by new value. All factual inferences will be made in favor of the Defendants. *See Johnson & Johnson*, 1996 WL 39445, at *2 ("taking all of the facts in the light most favorable to [non-movant]").

## DISCUSSION

### A. Exemption for Transfers in the Ordinary Course, 11 U.S.C. § 547(c)(2)

As an affirmative defense, the Defendants allege that the record supports the inference that the Transfers were made in the ordinary course of the parties existing business relationship and therefore are exempt from avoidance pursuant to § 547(c)(2).[4] The purpose of § 547(c)(2) is two-fold. First, Congress

---

[4] In relevant part, § 547(c)(2) reads:
"(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary

7

intended the allowance of an exemption for payments made in a debtor's ordinary course of business to deter a race to the courthouse by a debtor's creditors when confronted by a suspicion of insolvency. Second, Congress also intended the section to preserve the principle of equality of distribution among a debtor's creditors. *See Union Bank v. Wolas*, 502 U.S. 151, 160-61 (1991) (acknowledging § 547(c)(2)'s dual purposes).

To defeat the Trustee's Motion, the Defendants must establish that the facts do not preclude a conclusion that the Transfers are exempt from avoidance. *See, e.g., Johnson & Johnson*, 1996 WL 39445, at *2. The record must permit the inference that (1) the underlying debt was incurred in the ordinary course of both the Debtor's and the Defendants' businesses; (2) the Transfers were made and received in the ordinary course of their business dealings; and (3) made according to ordinary business terms. *See In re Molded Acoustical Products, Inc.*, 18 F.3d 217, 219 (3d Cir. 1994); *Quad Systems Corp. v. H & R Indus., Inc. (In re Quad Systems Corp.)*, Adv. No. 02-0972, 2003 WL 25947345, at *4 (Bankr. E.D. Pa. Jul. 15, 2003).

Imposed by the preamble language of § 547(c)(2), the first prong of the test requires that the debt to which payments relate must be "incurred by the debtor *in the ordinary course of business or financial affairs of the debtor and the transferee...*" 11 U.S.C. § 547(c)(2) [emphasis added]. This prong does not refer to the parties' conduct with regard to the Debtor's payment history. Rather, it addresses circumstances under which the debt was originated. In other words, it is not sufficient that the Transfers be made in the ordinary course. The loans must also have been incurred by the Debtor and the Defendants in their respective ordinary business dealings. *See, e.g., In re Pioneer Technology, Inc.*, 107 B.R. 698, 702 (9th Cir. BAP 1988) (holding that insider transaction did not fall within scope of § 547(c)(2)); *Wilen v. Pamrapo Savings Bank (In re Bayonne Medical Center)*, 429 B.R. 152, 187 (Bankr. D.N.J. 2010) (acknowledging that the underlying debt must be in and of itself in the ordinary course); *In*

---

course of business or financial affairs of the debtor and the transferee, and such transfer was—
(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
(B) made according to ordinary business terms;"
11 U.S.C. § 547(c)(2).

*re Ameri P.O.S. Inc.*, 355 B.R. 876, 883 (Bankr. S.D. Fla. 2006) (stating "[t]he first element requires an examination into the normality of such incurrences in each party's business operations generally.") (quotations omitted).

To evaluate whether the first prong of the test has been met, courts will look to whether the debt is typical of the debtor's and creditor's business dealings and whether the debt was incurred as a part of an arms-length transaction. *See, e.g., In re Johnston Industries, Inc.*, 357 B.R. 907, 915 (Bankr. M.D. Ga. 2006); *Huffman v. New Jersey Steel Corp. (In re Valley Steel Corp.)*, 182 B.R. 728, 735 (Bankr. W.D. Va. 1995); 5 Collier on Bankruptcy ¶ 547.04[2][a][i] ("courts generally are interested in whether the debt was incurred in a typical, arms-length commercial transaction that occurred in the marketplace or, on the other hand, whether it was incurred as an insider arrangement with a closely held entity").

Here, the Defendants admit that the issuance of commercial loans is not typical of their business dealings. At the deposition of Stanley Mull, the Defendants' business dealings were addressed by the following exchange:

> "Q. Are you in the business of loaning money to companies?
> A. No, I am not.
> Q. Have you loaned monies to other companies in the past?
> A. No, I have not."

Memorandum, Exh. T-2. This Court finds that this admission necessarily precludes the Defendants from availing themselves of the § 547(c)(2) ordinary course exemption. *See, e.g., Laker v. Vallette*, Civ. No. 92-1683, 1993 WL 114515, at *4-5 (E.D. La. Mar. 31, 1993) (stating "The first problem is that Creditor was not in the business of making loans.") *aff'd* 14 F.3d 1088 (5th Cir. 1994); *Pioneer Technology*, 107 B.R. at 702; *In re Fulghum Constr. Corp.*, 45 B.R. 112, 116 (Bankr. M.D. Tenn. 1984).

The facts of this case appear to be most consistent with the 9th Circuit BAP's decision in *Pioneer Technology*. In that decision, the court held that the creditor did not qualify for the ordinary course exemption because the underlying debts were not incurred in the ordinary course of the creditor's business. Specifically, the court found that the creditor who was also a significant stockholder of the debtor made short-term loans to the debtor to "cover 'cash flow shortfalls' of the company." *Pioneer*
9

*Technology*, 107 B.R. at 702. Observing that the loans were more akin to capital infusions and that the transaction was outside of the normal course of the creditor's business affairs, the court held that such debts were not the kind that arose from the debtor's ordinary course of business and therefore the first prong of § 547(c)(2) could not be satisfied. *Id.* The same may be said of the Line of Credit and Balloon Notes.

The Defendants ask this Court to rely on decisions that allow creditors to rely on the ordinary course exemption where the underlying debt was incurred as a part of a first-time transaction with an existing lending institution. The case law relied upon by the Defendants can be distinguished on the ground that the Defendants are not lending institutions. For example, in *Woods v. Stratos Product Development, LLC (In re Ahaza Systems, Inc.)*, 482 F.3d 1118 (9th Cir. 2007), a case cited by the Defendants, the Ninth Circuit acknowledged that as to first-time transactions, "when we have no past debt between the parties with which to compare the challenged one, the instant debt should be compared to the debt agreements into which we would expect the debtor and creditor to enter as part of *their ordinary business operations.*" *Id.*, at 1126 (emphasis added). Here, the Defendants admit that they are not engaged in the business of lending. As a result, this Court not only finds that this line of authority to be inapplicable to the parties' situation, it demonstrates that the transactions at issue are necessarily not the type that are intended for § 547(c)(2) protection. *See, e.g.*, 5 Collier on Bankruptcy ¶ 547.04[2] (explaining that the ordinary course exemption "is intended to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee.").

Even if this line of authority was applicable, the Defendants have put forth no evidence as to whether, assuming they are engaged in this type of business, the terms of the Line of Credit are consistent with prevailing industry practices. To the contrary, this Court finds that Susquehanna Bank's refusal to provide an unsecured line of credit to the Debtor and the Defendants' subsequent acquisition of a line of credit on a secured basis and allowing their daughter, on behalf of the Debtor, to draw directly from the Defendants' line of credit suggest that the transactions at issue do not conform with standard practices.

For these reasons, this Court finds that the Defendants have not met their burden. The record permits no inference that the underlying debt could have been incurred as part of their ordinary business operations. The Defendants, as a matter of law, are unable to avail themselves of the ordinary course exemption.

### B. Exemption for Transfers Offset by Subsequent New Value, 11 U.S.C. § 547(c)(4)

As an alternative affirmative defense, the Defendants claim that the record supports the inference that a portion of the Preference Payments were offset by subsequent new value as evidenced by the Advances made by the Defendants to the Debtor. Section 547(c)(4) provides a defense where the creditor provided new value to the Debtor subsequent to the transfers.[5] Drawing all inferences in their favor, the Defendants bear the burden of showing that, as a matter of law, the facts do not preclude the availability of the new value defense. *See, e.g., Johnson & Johnson*, 1996 WL 39445, at *2. The Third Circuit has stated that a creditor asserting the new value defense must prove:

> "(1) the creditor must have received a transfer that is otherwise voidable as a preference under § 547(b); (2) after receiving the preferential transfer, the preferred creditor must advance 'new value' to the debtor on an unsecured basis; and (3) the debtor must not have fully compensated the creditor for the 'new value' as of the date that it filed its bankruptcy petition."

*Schubert v. Lucent Technologies, Inc. (In re Winstar Communications, Inc.)*, 554 F.3d 382, 402 (3d Cir. 2009) (internal quotations omitted) *citing New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc.)*, 880 F.2d 679, 680 (3d Cir. 1989).

The Defendants alleged that they provided new value to the Debtor after the Transfers in the form of continued availability of credit as evidenced by the Advances. The Trustee acknowledges that the Defendants advanced an additional $340,000 to the Debtor during the Insider Preference Period. However, the Trustee argues the Defendants may not offset these advances from the amount of the

---

[5] Pursuant to § 547(c), a trustee may not avoid a transfer:
> "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor-(A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor."

11 U.S.C. § 547(c)(4).

11

Transfers because the Third Circuit's decision in *New York City Shoes* require that the Advances remained unpaid as of the Petition Date.

The Defendants counter that the "remain unpaid" requirement does not apply to the Advances because they are not an "otherwise unavoidable transfer" as provided by § 547(c)(4)(B). The Defendants rely upon the so-called "subsequent advance" approached as discussed in *Wahoski v. American & Efrid, Inc. (In re Pillowtex Corp.)*, 416 B.R. 123, 128 (Bankr. D. Del. 2009) as support for their position. In that decision, Bankruptcy Judge Kevin J. Carey, District of Delaware, found that the "plain- albeit complex- meaning" of the language set forth in § 547(c)(4)(B) requires a determination of not whether the new value "remains unpaid," but whether "the new value has been repaid with an otherwise unavoidable transfer." *Id.*, at 129 citing *Laker v. Vallette (In re Toyota of Jefferson, Inc.)*, 14 F.3d 1088, 1093 n.2 (5th Cir. 1994).

This Court finds that the Trustee's reliance upon *New York City Shoes* is misplaced. Although the Third Circuit stated in *New York City Shoes* that new value must "remain unpaid on the date of the petition," *New York City Shoes,* 880 F.2d at 680, it did so only in dicta. "[T]he disputed issue in *New York City Shoes* concerned only the second element of this test [Section 547(c)] and required the Court to determine whether a creditor who shipped goods to a debtor after delivery of a postdated check provided new value *after* receiving the transfer." *Pillowtex Corp.*, 416 B.R. at 128. The Third Circuit did not discuss or address the requirement of § 547(c)(4)(B) that the new value must not be an "otherwise unavoidable transfer." As such, there is no precedential decision in this Circuit on the meaning of § 547(c)(4)(B).

This Court agrees with Judge Carey's analysis in *Pillowtex* and finds that the plain language of § 547(c)(4)(B) permits a defendant to assert as a defense new value, even if paid, so long as the payment was not "otherwise unavoidable." Here, the Trustee is attempting to avoid payments received from the Debtor while simultaneously relying on the same payments, *avoidable* transfers, to preclude the Defendants from asserting the subsequent new value defense. *See Pillowtex*, 416 B.R. at 128 ("[T]he trustee should not be able to assert the new value was paid if the trustee is asserting that the paying

transaction was in fact a preference which the trustee can avoid.") (quotation omitted). The Trustee's approach of relying on an avoidable transfer to preclude the Defendants from invoking the new value defense is not consistent with the plain meaning of § 547(b)(4)(B). The Defendants are entitled to rely on these subsequent payments, to the extent they are not unavoidable, as new value.

This Court further finds that it is appropriate to use the subsequent advance approach when applied to a revolving credit relationship. This approach prevents a debtor's estate from being unfairly enriched at the expense of a creditor and advances the purpose of the new value exception. In *Toyota of Jefferson*, a case with facts similar to the matter before this Court, the Fifth Circuit addressed this precise issue. There, the defendant asserted the new value defense in connection with a series of cash advances made to the debtor. The defendant, the mother of the president and majority shareholder of the debtor, had made three advances to the debtor totaling $203,992.75 each of which had been repaid prior to the debtor's filing for bankruptcy. The bankruptcy court held that only the final repayment by the debtor could be avoided. The bankruptcy court reasoned that because "[t]he same money was borrowed and repaid three times," the recovery of the entire amount of the alleged preference payments would allow the debtor's estate to be unjustly enriched. *Toyota of Jefferson*, 14 F.3d at 1090.

On appeal, the Fifth Circuit upheld the lower court's decision and explained that the type of transactions were exactly the type that the drafters of § 547(c)(4) intended to protect and stated:

> "The exception most obviously applies to revolving credit relationships. Two policy considerations support the exception. First, without the exception, a creditor who continues to extend credit to the debtor, perhaps in implicit reliance on prior payments, would merely be increasing his bankruptcy loss. Second, the limited protection provided by the subsequent advance rule encourages creditors to continue their revolving credit arrangements with financially troubled debtors, potentially helping the debtor avoid bankruptcy altogether. Protecting the creditor who extends 'revolving credit' to the debtor is not unfair to the other creditors of the bankrupt debtor because the preferential payments are replenished by the preferred creditor's extensions of new value to the debtor."

*Id.*, at 1091 (citations omitted).

Finally, this Court believes that its decision to apply the subsequent advance approach is consistent with the Third Circuit's reasoning in *New York City Shoes*. In *New York City Shoes*, the Third

13

Circuit recognized that § 547(c)(4) has two interrelated purposes: (1) "to encourage trade creditors to continue dealing with troubled businesses;" and (2) to guarantee the fair treatment of a "creditor who has replenished the estate after having received a preference." *New York City Shoes*, 880 F.2d at 680-81. The application of the subsequent advance approach to protect the Advances is consistent with both purposes. *See, e.g., Holber v. Dolchin Slotkin & Todd, P.C. et al. (In re American Rehab & Physical Therapy, Inc.)*, Adv. No. 04-0847, 2006 WL 1997431, at *14 (Bankr. E.D. Pa. May 18, 2006) (offsetting amount of new value against amount of avoidable preferences to determine net amount of avoidable preference payment).

As a result, this Court will allow the Defendants to avail themselves of the subsequent new value approach to reduce their net preference exposure. Application of this rule, as set forth below, results in an avoidable preference against the Defendants in the amount of $400,000:

| Date | From | To | Amount | Net Amount |
|---|---|---|---:|---:|
| 20-Jan-09 | Debtor | Defendants | ($150,000.00) | ($150,000.00) |
| 20-Jan-09 | Debtor | Defendants | ($50,000.00) | ($200,000.00) |
| 30-Jan-09 | Defendants | Debtor | $75,000.00 | ($125,000.00) |
| 4-Feb-09 | Defendants | Debtor | $25,000.00 | ($100,000.00) |
| 6-Feb-09 | Defendants | Debtor | $20,000.00 | ($80,000.00) |
| 9-Feb-09 | Debtor | Defendants | ($40,000.00) | ($120,000.00) |
| 25-Mar-09 | Defendants | Debtor | $20,000.00 | ($100,000.00) |
| 30-Mar-09 | Debtor | Defendants | ($80,000.00) | ($180,000.00) |
| 7-Apr-09 | Defendants | Debtor | $100,000.00 | ($80,000.00) |
| 15-Apr-09 | Debtor | Defendants | ($20,000.00) | ($100,000.00) |
| 23-Apr-09 | Defendants | Debtor | $60,000.00 | ($40,000.00) |
| 27-Apr-09 | Defendants | Debtor | $20,000.00 | ($20,000.00) |
| 28-Apr-09 | Debtor | Defendants | ($50,000.00) | ($70,000.00) |
| 1-May-09 | Debtor | Defendants | ($50,000.00) | ($120,000.00) |
| 18-May-09 | Defendants | Debtor | $20,000.00 | ($100,000.00) |
| 28-May-09 | Debtor | Defendants | ($300,000.00) | ($400,000.00) |

**SUMMARY**

The parties agree that the Transfers are preferential under 11 U.S.C. § 547(b) and that the Defendants are "insiders" as defined by 11 U.S.C. § 101(31). This Court finds that, drawing all inferences in their favor, the Defendants cannot demonstrate the applicability of the ordinary course of business defense under 11 U.S.C. § 547(c)(2). However, this Court does find that the Defendants have demonstrated that, drawing all inferences in their favor, they are entitled to offset the Transfers by new value as provided by 11 U.S.C. § 547(c)(4). Accordingly, the Trustee is entitled to partial summary judgment in its favor on its claims under 11 U.S.C. § 547(b) and 11 U.S.C. § 550(a) and against the Defendants in the amount of $400,000.

An Order consistent with this Memorandum Opinion will be entered.

Dated: March 1, 2011

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE